UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------
DIGNA T.,

                        Plaintiff,        <u>DECISION AND ORDER</u>
                                          1:24-CV-01119-GRJ

            v.

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
-------------------------------------------------------
GARY R. JONES, United States Magistrate Judge:

    In March of 2016, Plaintiff Digna T.[1] applied for Disability Insurance

Benefits and Supplemental Security Income Benefits under the Social

Security Act. The Commissioner of Social Security denied the applications.

Plaintiff, represented by Christopher James Bowes, Esq., commenced this

action seeking judicial review of the Commissioner's denial of benefits

under 42 U.S.C. §§ 405 (g) and 1383 (c)(3).  The parties consented to the

jurisdiction of a United States Magistrate Judge. (Docket No. 9).

    This case was referred to the undersigned on August 1, 2024.

Presently pending are the parties' requests for Judgment on the Pleadings

under Rule 12 (c) of the Federal Rules of Civil Procedure. For the following

---

[1] Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil Procedure 5.2 (c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

reasons, Plaintiff is granted judgment on the pleadings, the Commissioner's decision is reversed, and this matter is remanded for calculation of benefits.

## I.  BACKGROUND

### A.    Administrative Proceedings

Plaintiff applied for benefits on March 11, 2016, alleging disability beginning November 2, 2015. (T at 256-59, 260-68).[2]  Plaintiff's applications were denied initially and on reconsideration.  She requested a hearing before an Administrative Law Judge ("ALJ").

A hearing was held on March 22, 2018, before ALJ Lori Romeo. (T at 66-96). Plaintiff appeared with an attorney and testified with the assistance of an interpreter. (T at 75-84). The ALJ also received testimony from Dr. Arnold Ostrow, a medical expert (T at 85-88), and Joseph Thompson, a vocational expert. (T at 88-93).

ALJ Romeo held a supplemental hearing on August 1, 2018. (T at 33-65).  Plaintiff appeared with an attorney and testified with the assistance of an interpreter. (T at 37-40, 48-51). The ALJ received testimony from two medical experts, Dr. Robert Thompson (T at 40-48) and Dr. Richard Buitrago (T at 51-54), along with testimony from Frank Linder, a vocational expert. (T at 56-61).

---

[2] Citations to "T" refer to the administrative record transcript at Docket No. 10.

On September 4, 2018, ALJ Romeo issued a decision denying the applications for benefits. (T at 15-32).  On April 19, 2019, the Appeals Council denied Plaintiff's request for review. (T at 1-8).

Plaintiff commenced an action in the United States District Court for the Southern District of New York, seeking judicial review of the ALJ's decision.  On October 8, 2020, the Honorable Vernon S. Broderick, United States District Judge, approved a stipulation remanding for further administrative proceedings. (T at 729).  The Appeals Council vacated the ALJ's decision and remanded for further development of the record and reconsideration. (T at 741-47).

A further administrative hearing was held on April 15, 2021, before ALJ Romeo. (T at 690-728).  Plaintiff appeared with an attorney and testified with the assistance of an interpreter. (T at 701-710).  ALJ Romeo also received testimony from Patricia Highcove, a vocational expert. (T at 712-720).

On July 27, 2021, ALJ Romeo issued a second decision denying the applications for benefits. (T at 660-83).   Plaintiff commenced a second action in the United States District Court for the Southern District of New York seeking judicial review.  On June 27, 2023, this Court issued a

Decision and Order remanding the matter for further proceedings, with instructions to assign a new ALJ. (T at 1514-33).

An administrative hearing was held on October 3, 2023, before ALJ Mark Solomon. (T at 1423-56).  Plaintiff appeared with an attorney. (T at 1423).  The ALJ received testimony from Dr. John Anigbogu, a medical expert (T at 1430-37),[3] and Helene Feldman, a vocational expert. (T at 1440-52).

### B.    ALJ's Decision

On October 23, 2023, ALJ Solomon issued a decision denying the applications for benefits. (T at 1541-68).  The ALJ found that Plaintiff had not engaged in substantial gainful activity since November 2, 2015 (the alleged onset date) and met the insured status requirements of the Social Security Act through December 31, 2020 (the date last insured). (T at 1550).

The ALJ concluded that Plaintiff's varicose veins, degenerative disc disease of the lumbar spine, degenerative disc disease of the cervical spine and radiculopathy, degenerative changes to the bilateral hips, right knee chondromalacia patella, obesity status post-gastric bypass surgery,

---

[3] The ALJ struck Dr. Anigbogu's testimony from the record based on an objection by Plaintiff's counsel. (T at 1547).

left knee osteoarthritis, bipolar disorder, depressive disorder, anxiety disorder, and headaches were severe impairments as defined under the Act. (T at 1550).

However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 403, Subpart P, Appendix 1. (T at 1551).

At step four of the sequential analysis the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work, as defined in 20 CFR 404.1567 (b), with the following limitations: she can sit for 6 hours; stand and walk for combined total of 6 hours; carry up to 20 pounds occasionally and 10 pounds frequently; never climb ladders, ropes, or scaffolds; never crouch; occasionally climb ramps and stairs; occasionally stoop; and must avoid working at unprotected heights or with hazardous machinery. (T at 1554).

The ALJ further found that Plaintiff can remember, understand, and carry out simple instructions, use judgment to make simple work-related decisions, adapt to routine and occasional changes in the workplace, and can have routine (no limits) contact with supervisors, coworkers, and the public. (T at 1554).

The ALJ concluded that Plaintiff could not perform her past relevant work as a home health aide. (T at 1565).

However, considering Plaintiff's age (45 on the alleged onset date), education (limited), work experience, and RFC, the ALJ determined that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (T at 1565-66).

As such, the ALJ found that Plaintiff had not been under a disability, as defined under the Social Security Act, and was not entitled to benefits for the period between November 2, 2015 (the alleged onset date) and October 23, 2023 (the date of the ALJ's decision). (T at 1567).

ALJ Solomon's decision is considered the Commissioner's final decision.

### C.    *Procedural History*

Plaintiff commenced this action, by and through her counsel, by filing a Complaint on February 15, 2024. (Docket No. 1).  On June 5, 2024, Plaintiff filed a brief requesting judgment on the pleadings. (Docket No. 15). The Commissioner interposed a brief requesting judgment on the pleadings on July 19, 2024. (Docket No. 17).  On August 9, 2024, Plaintiff submitted a reply brief in further support of her request. (Docket No. 18).

## II.  APPLICABLE LAW

*A.    Standard of Review*

"It is not the function of a reviewing court to decide de novo whether a claimant was disabled." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). The court's review is limited to "determin[ing] whether there is substantial evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard." *Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam).

The reviewing court defers to the Commissioner's factual findings, which are considered conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g). "Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lamay v. Commissioner of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (internal quotations omitted) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"In determining whether the agency's findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotations omitted).

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard," or when the ALJ's rationale is unclear, remand "for further development of the evidence" or for an explanation of the ALJ's reasoning is warranted.  *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).

B.    *Five-Step Sequential Evaluation Process*

Under the Social Security Act, a claimant is disabled if he or she lacks the ability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...."  42 U.S.C. § 423(d)(1)(A).

A claimant's eligibility for disability benefits is evaluated pursuant to a five-step sequential analysis:

1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.

2. If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities.

3. If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without

considering vocational factors such as age, education, and work experience.

4. If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.

5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform.

*See Rolon v. Commissioner of Soc. Sec*., 994 F. Supp. 2d 496, 503

(S.D.N.Y. 2014); *see also* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v),

416.920(a)(4)(i)–(v).

The claimant bears the burden of proof as to the first four steps; the

burden shifts to the Commissioner at step five. *See Green-Younger v.

Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). At step five, the Commissioner

determines whether claimant can perform work that exists in significant

numbers in the national economy. *See Butts v. Barnhart*, 416 F.3d 101,

103 (2d Cir. 2005); 20 C.F.R. § 404.1560(c)(2).

## III.  DISCUSSION

Plaintiff raises two main arguments in support of her request for

reversal of the ALJ's decision.  First, Plaintiff argues that the ALJ's

assessment of the medical opinion evidence was flawed.  Second, Plaintiff

contends that the ALJ did not adequately account for her need for an

assistive device and receipt of home health aide services.  This Court will address both arguments in turn.

### A.    Medical Opinion Evidence

"Regardless of its source, the ALJ must evaluate every medical opinion in determining whether a claimant is disabled under the [Social Security] Act." *Pena ex rel. E.R. v. Astrue*, No. 11-CV-1787 (KAM), 2013 WL 1210932, at *14 (E.D.N.Y. Mar. 25, 2013) (citing 20 C.F.R. §§ 404.1527(c), 416.927(d) (2020)) (internal quotation marks omitted).[4]

A "treating physician" is the claimant's "own physician, psychologist, or other acceptable medical source who provides [the claimant] ... with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." 20 C.F.R. § 404.1502.

Treating physician opinions are considered particularly probative because they "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be

---

[4] In January of 2017, the Social Security Administration promulgated new regulations regarding the consideration of medical opinion evidence.  The revised regulations apply to claims filed on or after March 27, 2017.  See 20 C.F.R. § 404.1520c.  Because Plaintiff applied for benefits before that date, the new regulations do not apply here.

obtained from the objective medical evidence alone or from reports of individual examinations." 20 C.F.R. §§ 404.1527(c)(2); 416.927(d)(2).

An opinion from a treating physician is afforded controlling weight as to the nature and severity of an impairment, provided the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2); 416.927(d)(2).

However, treating physician opinions are not always dispositive.  For example, an opinion will not be afforded controlling weight if it is "not consistent with other substantial evidence in the record, such as the opinions of other medical experts." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).

To determine how much weight a treating physician's opinion should be given, the ALJ considers the "*Burgess* factors" identified by the Second Circuit: "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Estrella v. Berryhill*, 925 F.3d 90, 95–96 (2d Cir. 2019)(following *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)).

The *Burgess* factors are also applied to the opinions of non-treating physicians, "with the consideration of whether the source examined the claimant or not replacing the consideration of the treatment relationship between the source and the claimant." *McGinley v. Berryhill*, No. 17 Civ. 2182, 2018 WL 4212037, at *12 (S.D.N.Y. July 30, 2018).  A consultative physician's opinion may constitute substantial evidence. *See Petrie v. Astrue*, 412 F. Appx 401, 406 (2d Cir. 2011).

In the present case, the record contains several medical opinions. This Court will summarize each opinion and then discuss the ALJ's analysis.

### 1.   Dr. Balmaceda

In or about March of 2018, Dr. Casilda Balmaceda, a treating physician, completed a lumbar spine RFC questionnaire.  She opined that Plaintiff could sit, stand, or walk for less than 2 hours in an 8-hour workday, never lift any weight, rarely climb stairs, and would likely miss more than 4 days of work per month due to her impairments or treatment. (T at 611-13). Dr. Balmaceda reported that Plaintiff's experience of pain and other symptoms would constantly interfere with her attention and concentration. (T at 611).

Dr. Balmaceda also completed a cervical spine RFC questionnaire, apparently at or about the same time, in which she assessed the same limitations. (T at 615-19).

At or about the same time, Dr. Balmaceda appears to have completed another form, which is difficult to decipher due to poor handwriting, but in which the physician seems to decline to provide an assessment of Plaintiff's limitations. (T at 609).

### 2.    *Dr. Ravi*

Dr. Ram Ravi performed a consultative examination in April of 2016. Dr. Ravi characterized Plaintiff's prognosis as "[g]uarded," but assessed no limitation in Plaintiff's ability to sit or stand and moderate limitation with respect to bending, pushing, pulling, lifting, and carrying. (T at 379).

Dr. Ravi opined that Plaintiff should not engage in squatting and should avoid activities involving mild or greater exertion. (T at 379).  He also explained that Plaintiff may experience scheduled interruptions due to a history of migraine headaches. (T at 379-80).

### 3.    *Dr. Aguiar*

Dr. Silvia Aguiar performed a consultative examination in December of 2017.  She characterized Plaintiff's prognosis as "[g]uarded." (T at 385). Dr. Aguiar assessed moderate limitation with respect to Plaintiff's ability to

bend, carry, and engage in heavy lifting. (T at 385). She opined that Plaintiff had moderate limitation in prolonged standing, walking, kneeling, and crouching. (T at 385).

In a medical source statement that accompanied her consultative examination report, Dr. Aguiar found that Plaintiff could frequently lift/carry up to 20 pounds, sit for 3 hours in an 8-hour workday, and stand/walk for 1 hour in an 8-hour workday. (T at 387-88).

### 4.    Dr. Thompson

Dr. Robert Thompson testified as a medical expert at the administrative hearing held in August of 2018.

Dr. Thompson reviewed the record and opined that Plaintiff could frequently lift 10 pounds and occasionally lift 20 pounds. (T at 45). He testified that Plaintiff could sit for 2 hours at a time and for a total of 6 hours in an 8-hour workday. (T at 45).

Regarding standing and walking, Dr. Thompson explained that, from an orthopedic standpoint, he believed Plaintiff could stand/walk for 6 hours in an 8-hour workday, but when considering Plaintiff's anemia and "cardiac factors" – which Dr. Thompson described as "technically outside of my field" – he opined that Plaintiff was likely limited to standing/walking for 4 hours in an 8-hour workday. (T at 45-46).

5.    *ALJ's Analysis*

Plaintiff challenges the ALJ's assessment of the medical opinion evidence concerning her ability to meet the physical demands of light work. *See Mancuso v. Astrue*, 361 F. App'x 176, 178 (2d Cir. 2010); 20 CFR § 404.1567 (b).

The ALJ found that the opinion of the treating physician - Dr. Balmaceda - was not entitled to controlling weight because it was "contradicted by substantial evidence in the record …." (T at 1564).

After a careful review of the record the Court concludes that the ALJ's decision cannot be sustained even under the deferential standard of review applicable here. Here's why.

First, the ALJ was improperly dismissive of extensive physical therapy records, which document significant, sustained findings of positive straight leg raising, muscle spasms, and reduced range of flexion and extension of the lumbar spine. (T at 981, 985, 987, 989, 991, 993, 995, 997, 999, 1001, 1006, 1008, 1010, 1012, 1014, 1016, 1018, 1020, 1027, 1078, 1081, 1083, 1085, 1087, 1091, 1142, 1149, 1151, 1153, 1155, 1157, 1159, 1163, 1165, 1167, 1207, 1229, 1246, 1255, 1262, 1275, 1288, 1302).

The ALJ placed great emphasis on the fact that there was no indication that Dr. Balmaceda reviewed the physical therapy records when formulating her opinion.  (T at 1564).

This fact is much less relevant, however, than the fact that the findings support Dr. Balmaceda's opinion and are inconsistent with the ALJ's characterization of the record as containing "benign exam findings." (T at 1564).

Although the record does contain some instances of more benign findings, the ALJ cannot "simply pick and choose from the transcript only such evidence that supports his determination, without affording consideration to evidence supporting the plaintiff's claims." *Sutherland v. Barnhart*, 322 F. Supp. 2d 282, 289 (E.D.N.Y. 2004); *see also Lopez v. Sec'y of Dept. of Health and Human Services*, 728 F.2d 148, 150–51 (2d Cir.1984) ("We have remanded cases when it appears that the ALJ has failed to consider relevant and probative evidence which is available to him.")); *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999); *Smith v. Bowen*, 687 F. Supp. 902, 904 (S.D.N.Y. 1988) ("[The ALJ] cannot pick and choose evidence that supports a particular conclusion.") (citing *Fiorello v. Heckler*, 725 F.2d 174, 175-76 (2d Cir. 1983)).

Second, the ALJ did not adequately account for the significant support Dr. Aquiar's assessment provides to Dr. Balmaceda's opinion. Notably, both the treating physician and this consultative examiner concluded that Plaintiff could not meet the physical demands of light work.[5]

Although the ALJ superficially recognized the consistency between the two assessments (T at 1564), he did not sufficiently account for the consistency between the two opinions and the support for those opinions found in the physical therapy notes referenced above. *See Shawn H. v. Comm'r of Soc. Sec*., No. 2:19-CV-113, 2020 WL 3969879, at *7 (D. Vt. July 14, 2020)("Moreover, the ALJ should have considered that the opinions of Stephens and Dr. Lussier are consistent with each other.").

Likewise, the ALJ gave little weight to the opinion of Dr. Thompson, the non-examining medical expert, who opined that when factoring in Plaintiff's anemia and "cardiac factors," Plaintiff was likely limited to standing/walking for 4 hours in an 8-hour workday. (T at 45-46).

Although the ALJ otherwise gave Dr. Thompson's opinion "significant weight," based on the expert's "detailed review of the record," (T at 1562),

---

[5] Dr. Aquiar opined that Plaintiff could frequently lift/carry up to 20 pounds, sit for 3 hours in an 8-hour workday, and stand/walk for 1 hour in an 8-hour workday. (T at 387-88).  Dr. Balmaceda stated that Plaintiff could sit, stand, or walk for less than 2 hours in an 8-hour workday. (T at 611).

he discounted this aspect of the opinion without giving due consideration to the extent to which the assessments of three physicians (a treating physician, a consultative examiner, and a non-examining expert) were consistent with each other and supported the conclusion that Plaintiff could not meet the standing/walking demands of light work.  This was error.

Third, the ALJ improperly relied on his own interpretation of the MRI findings.

The ALJ characterized the radiological record as "generally" describing musculoskeletal abnormalities that were "mild" or "minimal" and "only occasionally 'moderate' …." (T at 1565).  This conclusion is not consistent with a reasonable reading of the record.

A May 2014 MRI of the cervical spine revealed disc herniation at the C6-7 level and bulges at the C5-6 levels. (T at 358-59).  A July 2015 MRI of the lumbar spine showed disc bulges at L2-3 and L3-4, a disc bulge with decreased signal at L4-5, anterior spondylosis at L5-S1 with moderate disc space narrowing, endplate marrow narrow signal changes, and a broad-based disc bulge that encroached the right and left neural foramina. (T at 356).

A July 2016 MRI of the lumbar spine evidenced disc bulges at L2-3 and L3-4 levels, anterior spondylosis and moderate disc space narrowing,

and a broad-based disc bulge that encroached on the right and left foramina, with multilevel facet arthropathy. (T at 935).  An August 2016 MRI of the right knee revealed grade II chondromalacia patella, small joint effusion, and medial popliteal cyst. (T at 488, 506).

An MRI of the cervical spine in December of 2017 revealed no overall changes when compared to the May 2014 MRI. (T at 490).

A May 2019 MRI of the lumbar spine showed mild retrolisthesis of L4 on L5 and L5 on S1; multilevel disc disease at L4-5 and L5-S1 with a small right foraminal protruding disc herniation with impingement on the exiting right L5 nerve root and abutment of the transversing proximal right S1 nerve root; moderate left posterior lateral and foraminal protruding disc herniation and impingement of the exiting left L5 nerve root and transversing left S1 nerve root; and mild paraspinal muscle atrophy. (T at 936-37).

A January 2020 MRI of the right knee revealed findings compatible with "mild to moderate arthritic disease," a small tear of the posterior horn of the medial meniscus, a sprain of the medical collateral ligament, sprain of the patellar insertion ligaments, and mild quadriceps tendinosis. (T at 933-34).

A May 2020 MRI of the lumbar spine evidenced degenerative disc disease with "moderate" bilateral foraminal narrowing contacting the exiting L5 nerve roots considered to be unchanged from the July 2015 report. (T at 938).

A September 2022 MRI of the right knee revealed moderate arthrosis in the medial compartment with mild arthrosis in the patellofemoral compartment, with accompanying mild genu vara deformity. (T at 1765-76).

A June 2023 MRI of the lumbar spine showed a slight interval progression of mild annular bulging at L2-3 contributing to mild ventral thecal sac impingement. Tr. 1762.

The ALJ's statement that the MRIs only "occasionally" revealed moderate findings is at odds with and is not supported by a reasonable reading of the record. As detailed above, moderate abnormalities were consistently noted across a broad range of imaging studies.

Moreover, the ALJ's conclusion that the MRI findings were consistent with the ability to perform a range of light work is not supported by any medical opinion, but rather by the ALJ's own assessment. In so doing, the ALJ, a layperson, improperly assumed "the mantle of a medical expert." *See Balotti v. Comm'r of Soc. Sec.*, No. 20-CV-8944 (RWL), 2022 WL 1963657, at *6 (S.D.N.Y. June 6, 2022)(quoting *Amarante v. Comm'r of*

*Soc. Sec.*, No. 16-CV-0717, 2017 WL 4326014 at *10 (S.D.N.Y. Sept. 8, 2017); *see also Riccobono v. Saul*, 796 F. App'x 49, 50 (2d Cir. 2020) (holding that "the ALJ cannot arbitrarily substitute h[er] own judgment for competent medical opinion") (modifications in original).

The Commissioner defends the ALJ's decision by pointing to Dr. Thompson's testimony, which the ALJ gave "significant weight." (T at 1563).

Dr. Thompson, however, never examined Plaintiff, did not review the physical therapy records, and testified in November of 2018, and thus did not have the opportunity to review the numerous MRI reports prepared afterwards, which, as noted above, revealed bilateral neutral foraminal narrowing of the L5-S1 disc, marked disc space loss at L5-S1, and impingement of the L5 and S1 nerves (indeed, the only MRI of the lumbar spine available for Dr. Thompson's review was the July 2015 MRI).

In addition, as discussed above, Dr. Thompson believed Plaintiff was likely limited to standing/walking for 4 hours in an 8-hour workday. (T at 45-46).

For these reasons the Court has not difficulty concluding that the ALJ's decision to discount Dr. Balmaceda's opinion and overall assessment

of the medical opinion evidence was not consistent with applicable law or supported by substantial evidence.

### B.    Home Health Aide Services/Use of Walker

Plaintiff testified that she received the services of a home health aide. (T at 1564).  The ALJ described this fact as part of Plaintiff's "subjective complaints," without recognizing or addressing the evidence that Plaintiff had been approved for a home health aide for a total of 35 hours a week, needed the aide's assistance to prepare meals and monitor medication, and was an "active client" of a home health aide service. (T at 931-32, 1661, 1809).  This evidence supports Plaintiff's testimony regarding her physical limitations and contradicts the ALJ's conclusion that Plaintiff retained the RFC to perform a range of light work.  The ALJ erred by failing to address this evidence.

Plaintiff also contends that the ALJ erred by failing to consider evidence that she needed a walker for balance and pain.  However, the ALJ did discuss Plaintiff's requests for a walker, but noted the absence of references in the treatment notes to Plaintiff actually using one. (T at 1556). The Court finds no error in this aspect of the ALJ's decision.

### C.     Remand

A court reviewing the denial of benefits may, in its discretion, remand a claim for further proceedings, or solely for the calculation of benefits. 42 U.S.C. § 405(g) (sentence four) (a reviewing court may enter, upon the pleadings and the administrative record, "a judgment affirming, modifying, or reversing the decision of the Commissioner ... with or without remanding the cause for a rehearing").

Where the record is complete and contains persuasive proof of disability, "no purpose would be served" by additional administrative proceedings and remand for calculation of benefits is warranted.  *Curry v. Apfel*, 209 F.3d 117, 124 (2d Cir.2000).

Here, the record is fully developed and the evidence (including extensive physical therapy notes, MRI findings, and opinions from a treating physician, consultative examiner, and medical expert) establishes persuasive proof of disability.  The Commissioner does not articulate any rationale for further proceedings, other than an opportunity to correctly apply the relevant law, which was already afforded to the Commissioner on two previous occasions.  Plaintiff's applications for benefits have been pending for more than seven (7) years.

Further delay would be unjust and unnecessary.  A remand for calculation of benefits is the appropriate remedy. *See Carlantone v. Colvin*, No. 14-CV-8204 (DF), 2015 WL 9462956, at *14 (S.D.N.Y. Dec. 17, 2015)("In particular, courts in this Circuit have determined that, where one or more ALJs in a case have repeatedly erred in applying the treating physician rule, remand for further development of the record is unwarranted.") (collecting cases); *see also Jeremy B. v. Comm'r of Soc. Sec.*, No. 2:18-CV-159-JMC, 2019 WL 3297471, at *10 (D. Vt. July 23, 2019) ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication.")(quoting *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004)).

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff is granted judgment on the pleadings, the Commissioner's decision is reversed, and this matter is remanded for calculation of benefits. The Clerk is directed to enter final judgment in favor of the Plaintiff and then close the file.


Dated: August 23, 2024                    *s / Gary R. Jones*
                                          GARY R. JONES
                                          United States Magistrate Judge